IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

ROUTE TRIPLE SEVEN
LIMITED PARTNERSHIP,
c/o Odin, Feldman & Pittleman, P.C.
1775 Wiehle Avenue, Suite 400
Reston, Virginia 20190,

    Plaintiff,

vs.

TOTAL HOCKEY, INC.,
a Missouri corporation
c/o Registered Agent:
   Registered Agent Solutions Inc.
   7288 Hanover Green Drive
   Mechanicsville, Virginia 23111

    Defendant.

Case No. 1:14-cv-30 TSE/TCB



## COMPLAINT

Pursuant to 28 U.S.C. 1332, Plaintiff Route Triple Seven Limited Partnership files this Complaint as follows:

### Parties and Jurisdiction

1. Route Triple Seven Limited Partnership ("Plaintiff" or "Landlord") is a partnership established under the laws of the Commonwealth of Virginia.

2. Defendant, Total Hockey, Inc. ("Total Hockey" or "Tenant"), whose principal place of business is in Missouri, is a corporation chartered under the laws of the State of Missouri.

3. The amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00).

## Facts

4. A lease of the property located at Route 7 and Palisades Parkway in Loudoun County, Virginia (the "Lease") between Plaintiff and Total Hockey, dated February 26, 2013, is attached as Exhibit A.

5. At Section 3409 of the Lease Total Hockey represented that it was qualified to do business in the Commonwealth of Virginia and required it to so remain at all times during the Lease terms. Total Hockey was neither then nor at any time relevant to operative facts of this cause, either qualified to do business in the Commonwealth or recognized by the Commonwealth as having a legal existence within it.

6. A justiciable dispute has arisen between the parties from a claim asserted by Total Hockey that the Plaintiff, Landlord failed to timely construct certain improvements required of it and a consequential right of Total Hockey to delay the commencement of minimum rent payments established by the Lease.

7. Factually, The Plaintiff denies all allegations of delays by it and further asserts that as a consequent, Total Hockey's intentional and fraudulent misrepresentation that it was qualified to do business when it was not, and its prior breaches of the Lease, including, but not limited to, delays caused by it, Total Hockey has no standing or right to claim powers arising from delays by Plaintiff, if any.

8. Because of the fraudulent misrepresentation and breach of duty by Total Hockey, it had no right to demand performance by Landlord of any obligation under the Lease prior to such time, if then, as the misrepresentation and fraud was disclosed to Plaintiff and rectified. Total Hockey made no disclosure, but continued to conceal it, and Total Hockey did not qualify to do business and become a recognized legal entity in the Commonwealth until September 4,

2013, which was one day after it (illegally) opened for business. Thus, at no time during construction, when only meaningful delays could have possibly occurred, did Total Hockey have standing or the right to complain of delays.

9. No acts required of Total Hockey which were to be performed within the Commonwealth, such as, but not limited to, applying to and obtaining from political subdivisions, permits, including occupancy permits, building permits, etc., may be considered but putatively or inchoately issued prior to September 4, 2013, when Total Hockey came into legal existence within the Commonwealth. Thus, Total Hockey is for yet another reason precluded from asserting rights arising from delays, which required its prior performance of acts it was not legally authorized or empowered to do, including obtaining various plan approvals and permits and opening for business prior to September 4, 2013.

10. Total Hockey was required to deposit with the Landlord a sum equal to one month's rent, or $31,352. It did not do this; nor were there any circumstances which would have justified it withholding the deposit. For a period in excess of a month that the deposit remained unpaid, Total Hockey had no standing or right to assert a duty on the part of Landlord to perform any duty otherwise required of it.

11. Section 1401 of the Lease required Total Hockey, within 30 days of executing the Lease, to submit to Landlord its construction fit-out plans for Landlord's approval. The Tenant's Plans were not submitted within that time. In fact completed plans have yet to be delivered to Landlord for its acceptance and approval. Thus, Total Hockey's assertion that Plaintiff in some way caused the delayed delivery of its fit-out plans (though the lease actually provided an allowance to Total Hockey to develop those vary plans if they were not available from Plaintiff) fails as a matter of law as well as fact, since the 30 days it had to deliver the plans expired before

it had cured its material default and made the initial deposit. Not until then did it have the right to demand further services of the Plaintiff.

12. Exhibit D of the Lease required Tenant work to be done expediently. Instead, Total Hockey violated the Lease from the outset, in law and in fact, causing Time Delays as defined at Exhibit D4(i) and D4(iii) of the Lease.

13. Provisions of the Lease required Tenant to expediently and diligently use its best efforts in pursuing a building permit and completing Tenant's fit-out work. It did neither. Building plans were interdependent. Plans of the Shopping Center were needed for Tenant to do their plans. Shopping Center plans were provided Tenant before the Lease was signed. The Tenant's Plans were needed for Landlord to do their plans. The Lease required Tenant to submit its plans to Landlord on or before March 28, 2013. Though not complete, Tenant did not have plans suitable even for filing for a building permit prior to April 24, 2013. Then, though still a nonentity within the Commonwealth, it in fact applied for the permit. This 31-day dereliction constituted over 50% of the time required to complete the Tenant work, (it being at most a 60 days project).

14. The permit was, as a matter of fact, if not at law, approved on April 29, 2013. The Tenant did not pick up the permit until June 9. Moreover, at the time of approval, not only was Tenant still without legal existence and unauthorized to do business within the Commonwealth, the building contractor it had engaged to apply for permits and do its fit-out work was not licensed to do such work in the Commonwealth. It was not authorized to do so until May 16, 2013. It did not enter the Premises and commence work until June 11, 2013.

15. In light of all of the above, Landlord, as authorized by the provisions of Section 201(f) of the Lease, made the determination (as authorized by Section 3201), in its sole

reasonable discretion, that the building permit would have been issued on April 6, 2013, which by the terms of Section 201(f) is deemed the Rent Commencement Date, that is, as specified in Section 7 of the Lease, the date from which both minimum and additional rent is to accrue.

16. Had rent not commenced to accrue under the above circumstances, Section 201(f) of the Lease refers to the Rent Commencement Date as being, among other things, the date upon which Tenant opens the Premises to the public. Even under this provision, Tenant is not entitled to abate minimum rent until February 2014. To have such a right is could not have invited the public to the premises prior to August 31, 2013. During the latter part of August, it repeatedly invited members of the public to come upon the premises, view and tour the store, It also publicly advertised an invitation to the public to come upon the premises and purchase Tenant's merchandise, and apply printed coupons to price of purchases, which coupons had to be submitted and used prior to their expiration date , August 31, 2013, .

17. Section 310 of the Lease defines the Delivery Date as the date Landlord delivers the Premises to Tenant, The Premises were delivered at Tenant's contractors request on June 11, 2013, at which time Tenant's contractor entered the Premises and began its construction work without objection, complaint or reservation, requesting and requiring only that the premises be in a condition so that it could commence work, which they were. Section 201(e) of the Lease, provided for delivery by June 16 without consequence. It further provided no consequences if Total Hockey opened the premises prior to September 1, 2014. Thus, Delivery occurred prior to June 16 and Total Hockey opened the premises to the public prior to September, 1, 2014. Accordingly additional rent does not abate.

18. Because Total Hockey, contrary to its intentionally fraudulent representations, was not qualified to do business in the Commonwealth, it could not have elected to open for

business prior to August 31, 2013, as the Lease anticipated. It was not until September 4, 2013 that it gained the legal right to open its store. It, nonetheless, illegally began its retail operation on September 2, 2013. Thus, instead of anything Plaintiff may have allegedly done being the proximate cause of damages to the Defendant, it actually stands, though illegal, nonetheless, with two days operating revenues to which it is not lawfully entitled.

19. In fact, prior to August 31, Total Hockey could have opened for business but for its own delinquency. All work needed for opening had been completed, and everything needed for opening had been authorized. The Premises were fully stocked with merchandise.

20. Thus, Total Hockey's claim of a right to elect as a remedy for an alleged delay resulting in no damages whatever of a $188,440 minimum rent reduction cannot possibly be construed as stipulated damages, but rather a penalty in violation of public policy. Moreover, in light of the fraud and misrepresentation, to permit Total Hockey to profit in any manner when it impliedly represented the delivery date bargained for was critical when in fact it was not, would under the circumstances violate the covenant of good faith and fair dealing.

21. Tenant committed an anticipatory breach of contract in declaring it would not pay minimal rent prior to February 2014 and since then it committed an actual breach in refusing to pay such rent

22. Total Hockey further claims that due it from the Landlord is the sum of $113,064 as reimbursement for its fit-out expenses. However due to the fraud, misrepresentation, the various breaches of the Lease as hereinabove alleged and the right to set off, and the right of set off if due, Total Hockey is not entitled to recover that sum.

23. The Lease provides for the recovery of attorney fees and litigation cost by the substantially prevailing party.

24. Timely notice of the breaches alleged was given Total Hockey.

WHEREFORE, in consideration of the foregoing Plaintiff asks the court to declare its findings to be as Plaintiff has alleged and that: Total Hockey stands in material breach of the Lease; that the anticipatory breach was a material breach; that Tenant failed to perform the Lease with good faith and fair dealing; that because of its breaches fraud and misrepresentation and for lack of damages, to construe the Lease as to permit Total Hockey to abate the minimum rent would result in unjust and inequitable penalty, thus, against public policy; that Plaintiff is entitled to all remedies provided by law and the Lease Terms, including, rent, late charges and reasonable attorney fees; and such affirmative relief as Plaintiff may seek and such other relief to which Plaintiff may be entitled.

ROUTE TRIPLE SEVEN LIMITED PARTNERSHP
By Counsel

Dexter S. Odin (VSB No. 5121)
ODIN, FELDMAN & PITTLEMAN, P.C.
1775 Wiehle Avenue, Suite 400
Reston, Virginia 20190
Telephone: (703) 218-2122
Facsimile: (703) 218-2160
Dexter.Odin@ofplaw.com

F. Douglas Ross (VSB No. 23070)
ODIN, FELDMAN & PITTLEMAN, P.C.
1775 Wiehle Avenue, Suite 400
Reston, Virginia 20190
Telephone: (703) 218-2127
Facsimile: (703) 218-2160
Douglas.Ross@ofplaw.com

#2225825v3 - 17607/11970