IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

ROUTE TRIPLE SEVEN                   )
LIMITED PARTNERSHIP,                 )
    Plaintiff,                       )
                                     )        Case No. 1:14-cv-30
    v.                               )
                                     )
TOTAL HOCKEY, INC.,                  )
    Defendant.                       )
                                     )

## MEMORANDUM OPINION

At issue post-judgment and appeal in this landlord-tenant case is the tenant's claim for attorney's fees pursuant to a lease provision that granted attorney's fees to the "substantially prevailing party" in any suit brought to enforce the lease. The landlord plaintiff brought such a suit, which, in the end, was resolved by the entry of summary judgment in favor of the defendant tenant on all of the landlord's claims and in favor of the landlord on the tenant's single counterclaim. The landlord's appeal failed as the Court of Appeals for the Fourth Circuit affirmed the grant of summary judgment by unpublished opinion. *Route Triple Seven Limited P'ship v. Total Hockey Inc.*, 607 F. App'x. 229 (4th Cir. 2015) (unpublished). Now at bar is the tenant's fee claim, which the landlord disputes, raising the following questions:

(1) whether the tenant's fee claim is (i) barred by Rule 9(g), Fed. R. Civ. P., or (ii) permitted by Rule 54(c), Fed. R. Civ. P., where, as here, the tenant did not specifically request attorney's fees in its answer and counterclaim but merely relies on the contractual provision granting attorney's fees to a "substantially prevailing party;"

(2) whether the tenant is a "substantially prevailing party" within the meaning of the lease where, as here, the tenant prevailed on all of the landlord's claims, but not on the tenant's single counterclaim;

1

(3) whether the lease provision limiting the tenant's remedies to termination of the lease bars the tenant from recovering attorney's fees; and

(4) assuming the tenant is entitled to an award of reasonable attorney's fees, whether the fees claimed are reasonable in the circumstances.

As the parties have fully briefed and argued these questions, this fee dispute is now ripe for disposition.

I.

The facts pertinent to the fee dispute may be succinctly summarized.[1] The landlord plaintiff is Route Triple Seven Limited Partnership, a Virginia limited partnership composed of eight partners, three of whom are Virginia attorneys. The tenant defendant is Total Hockey, Inc., a Missouri corporation engaged in the business of selling hockey equipment.

On February 26, 2013, defendant entered into a lease ("Lease") with plaintiff for commercial property located in Loudoun County "[f]or the operation of a typical Tenant store selling hockey and/or lacrosse equipment, jerseys and other related merchandise" and "for no other use or purpose whatsoever." Lease § 201(c). The Lease provided for a ten-year initial term with options for renewals thereafter. The Lease further provided that, for the first five years, the minimum rent would be $20 per square foot of the premises with certain additional rent payments specified in the Lease. A rent deposit of one month's minimum rent and tenant's pro rata share of additional rent was also required. Additionally, the Lease required defendant (1) to be qualified to do business in Virginia at the time of the Lease execution and (2) to deliver to plaintiff plans and specifications showing in reasonable detail any alterations that defendant

---

[1] For a more complete recitation of the facts, see the bench ruling on summary judgment. *See Route Triple Seven Limited P'ship v. Total Hockey Inc.*, No. 1:14cv30 (E.D. Va. Sept. 5, 2014) (Summary Judgment Transcript) (Doc. 47).

proposed to make to the premises within 30 days of the Lease execution. The Lease also stated that the "Anticipated Delivery Date" of the premises was June 1, 2013. Lease § 201(e). In the event the Premises were not delivered within 15 days of June 1, 2013, defendant, as its sole remedy, was allowed to (i) open for business by September 1, 2013, and pay all minimum rent and all additional rent; (ii) open for business after September 1, 2013, pay only minimum rent through January 2014, and pay minimum rent and additional rent beginning on February 1, 2014; or (iii) open for business on February 1, 2014, and pay both minimum and additional rent.

At the time the Lease was executed, the defendant was not qualified to do business in Virginia. Shortly thereafter, plaintiff advised defendant of this shortcoming, and defendant then promptly applied for and obtained a Certificate to transact business in Virginia. Defendant had also failed to pay the requisite rent deposit at the time of the Lease execution, but promptly paid this rent deposit within 30 days of the Lease execution. Additionally, defendant sent plaintiff plans and specifications within 30 days of the Lease execution as was required, but it did not send ductwork plans until nearly two months after the Lease execution. Notably, plaintiff did not seek to terminate the Lease on any of these grounds.

Plaintiff failed to deliver the premises to defendant within fifteen days of June 1, 2013, as the Lease required. As a result, defendant, in accordance with the Lease, elected to open for business after September 1, 2013, and to pay only minimum rent through January 2014, but to begin paying minimum rent and the additional rent payments beginning in February 2014.

On January 13, 2014, plaintiff filed the instant action, alleging three breaches of the Lease:

> (1) that defendant was not qualified to do business in Virginia at the time the Lease was executed;
>
> (2) that defendant did not submit a rent deposit upon the Lease execution; and

3

(3) that defendant did not deliver plans and specifications showing in reasonable detail any proposed alterations to the premises within 30 days of the Lease execution.

Plaintiff's complaint further alleged that defendant's exercise of the Lease remedy in response to plaintiff's failure to deliver the premises on time violated Virginia public policy.

On February 11, 2014, defendant filed an answer denying that any material breach occurred and a counterclaim further alleging that plaintiff failed to provide defendant with an Improvement Allowance as required by the Lease. Thereafter, on August 8, 2014, defendant moved for summary judgment on all of plaintiff's claims. That same day, plaintiff filed a cross motion seeking summary judgment on its breach-of-contract claims and also a motion seeking summary judgment on defendant's counterclaim. Following full briefing and oral argument, an Order issued on September 5, 2014, (i) granting defendant's motion for summary judgment on all of plaintiff's claims; (ii) denying plaintiff's cross-motion for summary judgment on plaintiff's claims; and (iii) granting plaintiff's motion for summary judgment on defendant's single counterclaim.

Plaintiff's first two breach-of-contract claims—(i) defendant's failure to obtain a certificate of authority to transact business in Virginia and (ii) defendant's brief delay in paying the rent deposit—were not material because defendant promptly cured the breaches. And with respect to the third alleged breach-of-contract claim, no breach in fact occurred because the defendant timely delivered to defendant the requisite plans and specifications. Defendant was also awarded summary judgment on plaintiff's claim that defendant's exercise of its remedies under the Lease violated Virginia public policy, given that (i) the parties were sophisticated, (ii) plaintiff drafted the lease and hence the remedies clause, and (iii) the remedies clause in no way violated any Virginia public policy. In sum, defendant was granted summary judgment on all of

4

plaintiff's claims and plaintiff's cross-motion for summary judgment on its claims was denied. Plaintiff's sole victory occurred with respect to defendant's single counterclaim; the Lease clearly barred defendant from seeking money damages for the breach of the Lease alleged in the counterclaim. An Order issued on September 5, 2014, memorializing these rulings. *See Route Triple Seven Limited P'ship v. Total Hockey, Inc.*, 1:14cv30 (Sept. 5, 2014) (Order) (Doc. 33).

Promptly thereafter, defendant filed a motion for attorney's fees pursuant to the Lease provision entitling the "substantially prevailing party" to attorney's fees in any suit to enforce the Lease.[2] When plaintiff appealed the adverse summary judgment rulings, an order issued on October 9, 2014, deferring a ruling on defendant's motion pending final resolution of the appeal and giving defendant leave to renew its motion for attorney's fees, if necessary, within 14 days of the appeal's resolution. *Route Triple Seven Limited P'ship*, No. 1:14cv30 (Oct. 14, 2014) (Order) (Doc. 43). Defendant did not cross-appeal the summary judgment ruling on its counterclaim.

On June 22, 2015, in an unpublished *per curiam* decision, the Fourth Circuit affirmed the entry of summary judgment in favor of defendant in all respects. *Route Triple Seven Limited P'ship*, 607 F. App'x. 229 (4th Cir. 2015). Defendant then promptly renewed its motion for attorney's fees.

---

[2] Section 2701 of the Lease states that:

> If either party hereto finds it necessary to employ legal counsel or to bring an action at law or other proceedings against the other party to enforce any of the terms, covenants or conditions hereof, the unsuccessful party in any such proceeding shall pay to the substantially prevailing party, as determined by the Court, a reasonable sum for attorneys' fees and court costs. Attorneys' fees shall include attorneys' fees on any appeal, and in addition, a party entitled to attorneys' fees shall be entitled to all other reasonable costs for investigating such action, taking depositions and the discovery, travel, and all other necessary and reasonable costs incurred in such litigation.

## II.[3]

Analysis of this fee claim dispute properly begins with plaintiff's threshold argument that because the attorney's fee claim was not specifically pled, Rule 9(g), Fed. R. Civ. P., now bars that claim. Defendant counters, arguing that Rule 9(g) does not apply because the motion for attorney's fees is not a claim for special damages, and therefore Rule 54, Fed. R. Civ. P., controls and permits defendant's fee claim. Although it may appear that Rule 9(g) and Rule 54 conflict, a close examination of both Rules reveals that no conflict exists, and in the circumstances at bar, Rule 54 controls and Rule 9(g) does not operate.

Rule 9(g) states that "[i]f an item of special damage is claimed, it must be specifically pled." And it is true that the Fourth Circuit has held that "attorneys' fees are items of special damage for Rule 9(g) purposes." *Atlantic Purchasers, Inc. v. Aircraft Sales, Inc.*, 705 F.2d 712, 716 n.4 (4th Cir. 1983). From these two propositions, plaintiff completes the syllogism, arguing that defendant's fee claim is barred because it was not specifically pled in defendant's answer. But there is a flaw in plaintiff's syllogism; defendant's claim for attorney's fees is not an item of special damages; it is not an element of any claim but simply a contract entitlement for a "substantially prevailing party." In these circumstances, Rule 9(g) does not apply. Put

---

[3] The parties correctly agree that those portions of the dispute relating to federal law are governed by federal law, whereas those portions of the dispute relating to Virginia law are governed by Virginia law. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Specifically, the Federal Rules of Civil Procedure govern the procedural issues in this case, and Virginia law governs issues relating to contract interpretation, as the Lease was entered into in Virginia and contains a clause that states Virginia law governs the construction and performance of the Lease. Lease § 2702. *See also Klaxon Co. v. Stentor Electric Mfg. Co., Inc.*, 313 U.S. 487, 496-97 (1941) (holding that when state law applies, the choice of which state's law to apply is determined by the choice of law rules of the state in which the court sits); *Poole v. Perkins*, 101 S.E. 240, 242 (Va. 1919) (holding that "the law of the place where the contract is made will be enforced wherever the suit is brought").

differently, attorney's fees are special damages to which Rule 9(g) applies *only* when the substantive law requires that the prevailing party prove attorney's fees as an element of damages; Rule 9(g) does not apply where, as here, attorney's fees are sought as a recoverable cost pursuant to a contract.

Circuit authority is consistent with this result. As plaintiff points out, the Fourth Circuit, in *Atlantic Purchasers*, concluded that attorney's fees are special damages for purposes of Rule 9(g). *Atlantic Purchasers*, 705 F.2d at 716 n.4. Significantly, however, the court did so in the context of an action in which the prevailing party sought attorney's fees pursuant to the North Carolina Unfair Trade Practices Act, which requires attorney's fees to be proven as an element of damages. 705 F.2d at 715.

Although it appears the Fourth Circuit has not squarely addressed whether attorney's fees are special damages for purposes of Rule 9(g) in the circumstances at bar, close examination of Rule 9(g) and Rule 54(d)(2)(A) points persuasively in favor of the result reached here. Classifying attorney's fees as special damages where, as here, the fee award is sought as a recoverable cost pursuant to a contract is inconsistent with Rule 54(d)(2)(A), which provides that "[c]laims for attorneys' fees … shall be made by motion unless the substantive law governing the action provides for the recovery of such fees as an element of damages to be proved at trial." If all attorney's fees were special damages and subject to Rule 9(g), Rule 54(d)(2)(A) would make little sense, as it would effectively require a party seeking attorney's fees to plead its claim for a fee award as an element of damages pursuant to Rule 9(g) *and* later file an additional—and superfluous—motion for attorney's fees pursuant to Rule 54(d)(2)(A). In summary, a careful reading of Rule 9(g) and Rule 54(d)(2) discloses that they are properly construed to operate harmoniously. In circumstances where the substantive law governing the claim provides that

attorney's fees are an element of damages that must be proven as part of the underlying case, attorneys' fees are properly classified as special damages that must be specifically pled pursuant to Rule 9(g), and in that circumstance Rule 54(d)(2)(A) does not apply. On the other hand, where, as here, a party seeks attorney's fees pursuant to a contract, Rule 54(d)(2)(A) applies, and Rule 9(g) does not apply.

Moreover, this conclusion is consistent with the purpose of Rule 9(g), namely to give notice to the opposing party "'as to the nature of the damages claimed in order to avoid surprise'" and to the court as to "'the substance of the complaint.'" *Carnell Const. Corp. v. Danville Redev. & Housing Auth.*, 745 F.3d 703, 725 (4th Cir. 2014) (quoting *Great Am. Indem. Co. v. Brown*, 207 F.2d 306, 308 (5th Cir. 1962)). When attorney's fees are sought on the basis of a statutory right as an element of damages, the opposing party would lack notice that it could be liable for attorney's fees but for inclusion of these special damages in the pleadings. But when attorney's fees are sought as recoverable costs at the conclusion of a dispute pursuant to a contractual provision between the parties, notice by way of pleading is unnecessary because, as here, the contract itself provides notice.

The result reached here comports not only with the purpose of Rule 9(g) but also with Rule 54(c), which prescribes that "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings." The Fourth Circuit has "liberally construed" Rule 54(c), "leaving no question that it is the court's duty to grant whatever relief is appropriate in the case on the facts proved." *Robinson v. Lorillard Corp.*, 444 F.2d 791, 803 (4th Cir 1971). Of course, Rule 54(c) is not limitless; as the Fourth Circuit has noted, even where Rule 9(g) does not apply "[a] party will not be given relief not specified in its complaint where the 'failure to ask for particular relief so

prejudiced the opposing party that it would be unjust to grant such relief.'" *Atlantic Purchasers*, 705 F.2d at 716 (quoting *United States v. Marin*, 651 F.2d 24, 31 (1st Cir. 1981)). A party may be prejudiced if the additional relief would significantly increase its liability and the party was not "notified of the possibility of the ... relief prior to the plaintiff's tender of a proposed judgment." *Id.* at 717. Although the Fourth Circuit has not determined whether failure to plead attorney's fees results in prejudice, a district court in this circuit has found that there is no prejudice when the governing law gives notice to the opposing party that it might be liable for attorney's fees. *Calland v. Carr*, No. 9:14-cv-0420, 2015 WL 4394977 at *3 (D. S.C. July 16, 2015) (finding no prejudice when plaintiff "'ha[d] notice of the potential for an award of attorney fees'") (quoting *Utilities Constr. Co. v. Wilson*, 321 S.C. 244, 468 S.E.2d 1 (S.C. Ct. App. 1996)). Importantly, Rule 54(c)'s prejudice exception and Rule 9(g) are two complimentary means of advancing the same goal—to ensure that parties receive notice that they could be liable for attorney's fees. Indeed, it is precisely because an opposing party is not prejudiced by a failure to plead attorney's fees pursuant to a contract that Rule 9(g) is unnecessary and does not apply.

Although there is scant authority directly on point, the few pertinent published opinions are fully consistent with the result here.[4] Of particular relevance here, the Eastern District of Virginia has held that a request for attorney's fees under the terms of an agreement was not

---

[4] *See Perry v. Serenity Behavior Health Sys.*, No. cv106-72, 2009 WL 1259367, at *2, n.5 (S.D. Ga. May 6, 2009) ("Rule 54 governs instead of Rule 9(g) when the substantive law governing the action provides for attorney's fees as a recoverable cost as opposed to an element of damages."); *Riordan v. State Farm Mut. Auto. Ins. Co.*, No. cv07-38, 2008 WL 2512023, at *3 (D. Mont. June 20, 2008) (finding that attorney's fees typically are "special damages" within the meaning of Rule 9(g) when "the substantive law governing the action provides for recovery of attorney's fees as an element of damages, as opposed to a recoverable cost"); *In re Rivastigmine Patent Litig.*, No. 05 MD 1661, 2007 WL 1154000, at *7 (S.D.N.Y. Apr. 19, 2007) (dismissing plaintiff's argument that the attorney's fees must be specifically pled because the attorney's fees sought in the action were not an element of damages, and therefore fell under Rule 54).

subject to the specific pleading standard of Rule 9(g) because the fee provisions in the agreement were "contingent upon defendants actually prevailing in [the case], and thereby succeeding in enforcing their rights under the [agreement]." *See Lake Wright Hospitality, LLC v. Holiday Hospitality Franchising, Inc.*, 2009 WL 2606254, No. 2:07cv530, at *7 (E.D. Va. Aug 20, 2009) ("[Defendants] may wait until the disposition of this case to claim such fees.").[5]

Yet, plaintiff argues that Rule 54(c) does not apply in this case because defendant's fee claim is barred by res judicata. Specifically, plaintiff contends that because defendant pled its fee claim only in connection with its counterclaim, and the counterclaim was subsequently dismissed on summary judgment without appeal, claim preclusion bars consideration of the fee claim. It is well-settled that there "are three elements necessary to trigger claim preclusion by res judicata: (1) a judgment on the merits in a prior suit resolving (2) claims by the same parties or their privies and (3) a subsequent suit based on the same cause of action." *Aliff v. Joy Mfg. Co.*, 914 F.2d 39, 42 (4th Cir. 1990). When res judicata applies, the effect of claim preclusion is "that if a later litigation arises from the same cause of action as the first, then the judgment in the prior

---

[5] Plaintiff relies on two district court cases to argue that Rule 9(g) applies in this circumstance. Both cases are not only irrelevant to the question whether Rule 9(g) is applicable in this context, but also ultimately undermine plaintiff's argument. Although both district courts determined that an attorney's fee claim was barred by Rule 9(g) despite the language of Rule 54(d)(2), they are inapposite because the defendant in both cases sought attorney's fees as an element of damages pursuant to statutory law. *See Belk, Inc. v. Meyer Corp., U.S.*, No. 3:07-cv-168, 2010 WL 3474918 at *5 (W.D.N.C. Aug. 31, 2010) ("[Defendant] contends that it is entitled to an award of attorney's fees under either the Lanham Act ... or the North Carolina Unfair and Deceptive Trade Practices Act ... ."); *C-Tech Corp. v. Aversion Technologies*, No. DKC 11-0983, 2012 WL 3962508 at *9 (D. Md. Sept. 7, 2012) (requesting attorney's fees pursuant to the Maryland Trade Secrets Act and the Lanham Act). Moreover, both district courts ultimately concluded that, notwithstanding the Rule 9(g) requirement, the fee claim should be adjudicated pursuant to Rule 54(c). *See Belk, Inc*, 2010 WL 3474918 at *7 ("[B]ecause the [c]ourt has the authority under Rule 54(c) to award ... attorney's fees even though it was not ple[d] properly under Rule 9(g), the [c]ourt will examine whether [d]efendant is entitled to attorneys' fees ... ."); *C-Tech Corp.*, 2012 WL 3962508 at *8 (same).

action bars litigation 'not only of every matter actually adjudicated in the earlier case, but also of every claim that might have been presented.'" *Orca Yachts, LLC v. Mollicam, Inc.*, 287 F.3d 316, 318 (4th Cir. 2002) (quoting *In re Varat Enters., Inc.*, 81 F.3d 1310, 1315 (4th Cir. 1996)).

Here, defendant's fee claim was neither actually adjudicated nor could it have been adjudicated. Although defendant pled attorney's fees in its counterclaim, the issue was never argued prior to summary judgment. This was not a result of defendant's neglect. Rather, it was not yet possible for defendant to litigate the attorney's fee dispute. Indeed, plaintiff's theory of claim preclusion places the cart before the horse. The substantive claims resolved by entry of summary judgment were logically antecedent to defendant's claim for attorney's fees; the defendant's right to attorney's fees pursuant to the Lease provision did not vest until defendant became a "substantially prevailing party." Since plaintiff was awarded summary judgment on the counterclaim at the same time that defendant was awarded summary judgment on plaintiff's breach-of-contract claims, defendant was not a substantially prevailing party with a right to attorney's fees at the time of the prior proceeding. It obtained this status only after entry of summary judgment, at which time defendant properly moved for attorney's fees pursuant to Rule 54(d)(2). Fed. R. Civ. P. Thus, defendant's claim for attorney's fees was neither actually adjudicated nor could it have been adjudicated, and it is therefore not barred by res judicata.

### III.

Proper analysis of the fee claim dispute next considers whether the defendant is not a "substantially prevailing party" within the meaning of Section 2701 of the Lease and is therefore barred from recovering attorney's fees. This argument needs little attention because, as defendant correctly argues, there can be no doubt that defendant substantially prevailed.

Under Virginia law, it is well-settled that a "lease is a contract, and when the terms of a contract are clear and unambiguous, a court must give them their plain meaning." *Levisa Coal Co. v. Consolidation Coal Co.*, 662 S.E.2d 44, 51 (Va. 2008). The Supreme Court of Virginia has defined "prevailing party" as a "party in whose favor a judgment is rendered, regardless of the amount of damages awarded." *Sheets v. Castle*, 559 S.E.2d 616, 620 (Va. 2002)). In determining whether a party is a prevailing party, the "general result should be considered, and inquiry made as to who has, in the view of the law, succeeded in the action." *Sheets*, 559 S.E.2d at 620. Similarly, in *RF & P Corp. v. Little*, 440 S.E.2d 908, 917 (Va. 1994), the Supreme Court of Virginia held that a litigant was entitled to attorney's fees as the "substantially prevail[ing]" party under the Virginia Freedom of Information Act even though the litigant "did not prevail on each theory he advanced to the trial court." *Id.* at 917 n.5. Instead the Supreme Court went on to say that "[t]o obtain an award of attorney's fees … [the litigant] was required to show that he substantially prevailed on the merits of the case, not that he prevailed on every issue he raised." *Id.* In sum, close examination of pertinent Virginia case law reveals that a substantially prevailing party need not succeed on every claim raised, but rather need only achieve significant success on a majority of issues in dispute. In this regard, a Seventh Circuit decision in similar circumstances reached the conclusion that a party is a "substantially prevailing party" if "it win[s] more [issues] than it loses." *Tax Track Sys. Corp. v. New Investor World, Inc.*, 478 F.3d 783, 788 (7th Cir. 2007).

Here, defendant is a substantially prevailing party because it won summary judgment on all three of plaintiff's breach-of-contract claims and also on plaintiff's argument that defendant's invocation of § 201(e) of the Lease violated Virginia public policy. These rulings, affirmed by the Fourth Circuit, clearly were the bulk of the matters in dispute. Although plaintiff won

12

summary judgment on defendant's counterclaim, this counterclaim was limited to one relatively small issue. Thus, there can be little doubt that defendant was awarded summary judgment on the vast majority of the "significant issue[s] in dispute." *Hollowell*, 56 Va. App. at 86. Defendant is not barred from a fee award simply because defendant did not "prevail on every issue raised." *Little*, 440 S.E.2d at 917 n.5. This result comports with the common sense intuition that a substantially prevailing party need not be a completely prevailing party. Indeed, to say the defendant did not substantially prevail in this dispute is to deny that the San Francisco Giants won the 2014 World Series because they won only four of the seven games.

## IV.

Thorough analysis of the fee dispute next considers plaintiff's argument that defendant is precluded from recovering attorney's fees by virtue of the Lease provision limiting defendant's remedies to termination of the Lease. This argument fails because it ignores the Lease's controlling terms and general principles of contract interpretation.

Plaintiff argues that Section 3302 of the Lease overrides Section 2701 and bars an award of attorney's fees. In pertinent part, Section 3302 states:

> Tenant shall neither assert nor seek to enforce any claim for breach of this Lease against any of Landlord's assets other than Landlord's interest in the Shopping Center, or any portion thereof, and Tenant shall look solely to such interest for the satisfaction of any liability of Landlord under this Lease ... Except as set forth herein, if ... Landlord shall be held to be in breach of this Lease, Tenant's sole and exclusive remedy shall be a right to terminate this Lease.

By its own terms, however, this provision deals exclusively with claims for breaches of the Lease; it does not bar claims for attorney's fees that arise only after the contract issues have been adjudicated. More importantly, Section 3302's exclusivity clause begins with the phrase "[e]xcept as set forth herein" and clearly Section 2701 falls squarely within this exception.

What is more, plaintiff's argument violates the well-settled maxim of contract interpretation that "[n]o word or clause in the contract will be treated as meaningless if a reasonable meaning can be given to it, and there is a presumption that the parties have not used words needlessly." *City of Chesapeake v. States Self-Insurers Risk Retention Grp., Inc.*, 628 S.E.2d 539, 541 (Va. 2006). Here, plaintiff's interpretation of the Lease would render Section 2701 of the Lease meaningless. Plaintiff seeks to avoid this conclusion by contending that the provisions can be read together by interpreting the attorney's fee award as allowing enforcement of that award against only the plaintiff's interest in the property that is the subject of the Lease. But this argument overlooks the fact that, by its own terms, Section 3302 applies only to claims for breaches of the Lease. Defendant's claim for attorney's fees is not based on plaintiff's breach of the Lease and is governed by an entirely different section.

In sum, by the Lease's terms, defendant is entitled to an award of attorney's fees. Determination of the award's magnitude remains.

## V.

Because there is no bar to the fee recovery, the next question to address is whether the fees claimed are reasonable in the circumstances. They are not. Some hourly rates are excessive in the circumstances and the descriptions of many tasks are deficient, as many time entries lump multiple tasks together and containt vague task descriptions.

In its petition, defendant seeks attorney's fees in the amount of $224,428.00, along with nontaxable costs in the amount of $8,163.59 and taxable costs in the amount of $3,084.50. Plaintiff argues that $112,311.00 is a reasonable figure for attorney's fees in this case,[6] and it does not contest the costs put forward by defendant.

---

The well-settled lodestar methodology is the important starting point in fee claim evaluation. As the Supreme Court has noted, "the lodestar figure has, as its name suggests become the guiding light." *See Gisbrecht v. Barnhart*, 535 U.S. 789, 801 (2002).[7] The Fourth Circuit has also prescribed a method for calculating the lodestar figure. *Grissom v. Mills Corp.*, 549 F.3d 313 (4th Cir. 2008). Specifically, district courts are to (i) calculate the lodestar, which is determined by multiplying the "reasonable hourly rate" by the "hours reasonably expended," in light of the factors enumerated in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216 (4th Cir. 1978) and *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974),[8] (ii) subtract fees for hours spent on unsuccessful claims *unrelated* to successful ones, and (iii) award some percentage of the remaining amount, depending on the degree of success achieved. *Grissom*, 549 F.3d at 320-21. When calculating the lodestar in a case in which not all claims were successful, the district court must attempt to determine how many hours were reasonably expended litigating the successful claims, as well as those hours reasonably expended litigating any unsuccessful claims that were nonetheless related to a successful claim. This determination is appropriately guided by the *Johnson/Barber* factors. Although the lodestar calculation is the starting point, it is not the

---

[6] *See* Porter Decl. ¶¶ 11, 14.

[7] In a civil rights fee-shifting case, the Supreme Court has recently noted that the lodestar amount is presumptively reasonable once calculated in a particular case and may be adjusted only "in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010).

[8] These factors are: (i) the time and labor required; (ii) the novelty and difficulty of the questions; (iii) the skill required to perform the legal service properly; (iv) the preclusion of other employment by the attorney due to acceptance of the case; (v) the customary fee; (vi) whether the fee is fixed or contingent; (vii) time limitations imposed by the client or the circumstances; (viii) the amount involved and the results obtained; (ix) the experience, reputation, and ability of the attorneys; (x) the "undesirability" of the case; (xi) the nature and length of the professional relationship with the client; and (xii) awards in similar cases. *See Johnson*, 488 F.2d at 717-19.

end of the analysis. Once the lodestar has been calculated, the district court must consider whether the lodestar figure reflects all the *Johnson/Barber* factors, and a court may adjust the lodestar based only on the *Johnson/Barber* factors for which the lodestar figure fails to take into account adequately. Of course, any adjustment to the lodestar must be supported by an "objective and reviewable basis." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 558 (2010).

With these principles in mind, analysis appropriately proceeds to the determination of a reasonable attorney's fee in this case.

### A.

The starting point in the lodestar analysis is an assessment of the reasonableness of the hourly rates claimed in the fee petition. In this instance, the claimed hourly rates are unreasonably high for a straightforward landlord-tenant dispute such as this case.

The prevailing market rate of attorney's fees must be determined based on the "relevant community where the district court sits (*i.e.*, the Eastern District of Virginia)." *Grissom*, 549 F.3d at 321. Accordingly, in order to support the claimed rates, defendant must produce "satisfactory specific evidence of the prevailing market rates in the relevant community." *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 244 (4th Cir. 2009) (internal quotation marks and citations omitted). Such evidence consists of "affidavits of other local lawyers who are familiar both with the skills of the fee applicants and more generally with the type of work in the relevant community." *Id.* at 245.

Defendant has submitted an affidavit from Craig C. Reilly, who details his extensive experience litigating cases in this district and his familiarity with commercial disputes similar to the instant case. The Reilly Declaration states that defendant's rates are reasonable because they are within the range established pursuant to the so-called *Vienna Metro* Matrix, which establishes

16

a range of reasonable hourly rates in Northern Virginia based on the attorneys' experience level. *See Intelligent Verification Sys., LLC v. Microsoft Corp.*, No. 2:12-cv-525, 2014 WL 6685440 at *3 (E.D. Va. Nov. 25, 2014) ("[Plaintiff] further supported its claim for the hourly rates sought by relying on the matrix established in Northern Virginia in *Vienna Metro LLC v. Pulte Home Corp.*, 786 F.Supp.2d 1090 (E.D. Va. 2011)."). According to the Reilly Declaration, the "rates set forth in the *Vienna Metro* Matrix are the appropriate guideposts for the determination of reasonable, prevailing hourly rates in this action" because these rates comport with those charged by Northern Virginia firms for "complex commercial real estate litigation." *See* Reilly Decl. ¶ 15.

Defendant seeks fees for time logged by seven individuals who work for two different law firms. From Armstrong Teasdale LLP, defendant has submitted rates of $195/hour for paralegal Michelle Sutton, $260/hour for second-year associate Laura Bentele, $400/hour for partner Nancy Hawes, who has ten years' experience, $400/hour for partner Matthew Reh, who has sixteen years' experience, and $575/hour for partner Thomas Weaver, who has more than twenty years' experience.[9] From McGuire Woods LLP, defendant has submitted rates of $120/hour for paralegal Lisa LaBossiere, $415/hour for fourth-year associate John Thomas, and $595/hour for partner David Greenspan, who has fourteen years' experience.

All hourly rates sought by defendant are at or below the rates quoted in the *Vienna Metro* Matrix, but this fact, by itself, does not conclusively establish that they are reasonable. To begin with, the *Vienna Metro* Matrix, which comes from a district court opinion, is not binding here. In addition, that case involved complex commercial real estate litigation, not a straightforward lease

---

[9] These rates reflect the hourly rates quoted for the work performed in 2015; Armstrong Teasdale charged slightly lower rates for the work performed in 2014.

dispute. *Vienna Metro LLC*, 786 F.Supp.2d at 1091. Moreover, the Reilly Declaration does not explain why Mr. Greenspan, for example, a partner who has less experience than both Mr. Reh and Mr. Weaver, has submitted an hourly rate greater than the rates submitted by the more experienced lawyers. Nor is there an explanation for why Mr. Thomas, a fourth-year associate, has submitted an hourly rate that exceeds those submitted by Mr. Reh and Ms. Hawes, both of whom are partners with at least ten years' experience. More importantly, the Reilly Declaration does not override this Court's long and extensive experience in this district. Many capable and experienced attorneys and paralegals litigate breach of contract cases like this case at rates lower than the rates submitted by Mr. Weaver, Mr. Greenspan, Mr. Thomas, Ms. Bentele, Ms. Sutton, and Ms. LaBossiere.

At bottom, the *Vienna Metro* Matrix is a glove that does not fit here. It describes a type of litigation significantly more complex than presented in this case. Indeed, although Mr. Reilly is correct that commercial real estate cases are generally more complex than standard breach-of-contract cases, this case did not present complex or novel legal issues and did not require extensive fact-finding. At the end of the day, its resolution required straightforward application of breach-of-contract principles relevant to what constituted a material breach and whether the election of remedies clause in the Lease accorded with Virginia public policy. Indeed, the case was disposed of by entry of a relatively simple summary judgment Order, which the Fourth Circuit affirmed in a brief, unpublished per curiam decision. Thus, contrary to plaintiff's position, this landlord-tenant dispute was not complex; it was more akin to a garden-variety commercial dispute over a lease for a single store.

In cases similar in nature, difficulty, and complexity to the instant case, courts in this district have recognized rates up to $420/hour for partners, $275/hour for associates with several

years' experience, $200/hour for associates with only a few years' experience, and $118.90/hour for paralegals.[10] The Reilly Declaration provides no persuasive reason to countenance an award based on higher rates than these; apart from the *Vienna Metro* Matrix, no "extensive evidence" has been submitted to justify the higher rates. *Jones*, 2014 WL 2993443 at *7. The rates for two partners, Mr. Greenspan and Mr. Weaver, are far greater than $420/hour. The rate for an experienced associate, Mr. Thomas, substantially exceeds $275/hour. The rate for a second-year associate, Laura Bentele, exceeds $200/hour. And the rates for both paralegals, Michelle Sutton and Lisa LaBossiere, greatly exceed $118.90/hour.

Accordingly, for purposes of determining the lodestar amount, Ms. Sutton and Ms. LaBossiere's hourly rates for paralegal work are each reduced to $120/hour. Additionally, Mr. Thomas's hourly rate is reduced to $250/hour, and Ms. Bentele's hourly rate is reduced to $200/hour for both 2014 and 2015.[11] As for the partners, Mr. Greenspan's hourly rate is reduced

---

[10] *See Jones v. Southpeak Interactive Corp. of Delaware*, No. 3:12cv443, 2014 WL 2993443 at *7 (E.D. Va. July 2, 2014) (reasonable rate for experienced counsel was $420 per hour based on extensive evidence submitted regarding prevailing market rates in the locality); *Shammas v. Focarino*, 990 F.Supp.2d 587, 593 (E.D. Va. 2014) (reasonable rate for paralegal was $118.90 per hour); *In re Outsidewall Tire Litigation*, 52 F. Supp. 3d 777, 788 (E.D. Va. 2014) (reasonable rate for partners was $400 and reasonable rate for associates was $275); *Auto. Fin. Corp. v. EEE Auto Sales, Inc.*, No. 1:10cv1407, 2011 WL 3422648 at *8 (E.D. Va. Aug. 3, 2011) (reasonable market rates in Northern Virginia were $335–380 per hour for partners and $250 per hour for associates); *Lake Wright Hosp., LLC v. Holiday Hosp. Franchising, Inc.*, No. 2:07cv530, 2009 WL 4841017 at *7 (E.D. Va. Oct. 23, 2009) (rate of $350 per hour was reasonable and appropriate for law firm partner with 15 years' experience, rate of $200 per hour was reasonable for junior associate, and rate of $100 per hour was reasonable for paralegal); *Alford v. Martin & Gass, Inc.*, No. 1:08cv595, 2009 WL 2447936 at *4 (E.D. Va. Aug. 3, 2009) ($350 per hour was reasonable rate for experienced counsel and $170 was reasonable rate for associate with 1-2 years' experience).

[11] The distinction between associates with only a few years of experience and those with more years of experience reflects the weight given to the experience of attorneys under the *Johnson/Barber* test.

19

to $400/hour, and Mr. Weaver's hourly rate for 2014 and 2015 is reduced to $420/hour.[12] These reduced rates comport with rates determined in recent fee petitions adjudicated in this district.[13] The remaining attorneys' rates are left undisturbed and are accepted for lodestar purposes, as they accord with the rates courts in this district have recognized as reasonable for attorneys having similar seniority and experience levels.

**B.**

The next step in the lodestar analysis is to examine defendant's fee petition to determine the appropriate number of attorney hours to multiply by the hourly rates. Defendant's counsel has already properly exercised billing discretion by removing a number of time entries from the fee petition. *See* Reh Aff. ¶¶ 11-13; Greenspan Supp. Decl. ¶ 19. Nonetheless, defendant's submitted time entries, in some instances, are unreasonable insofar as they suffer from two common flaws: (1) lumping and (2) vague task descriptions.

Entries that lump multiple tasks together under a single time entry present a significant barrier to a reasonableness review. Indeed, as a court in this district has noted, lumping "simply does not provide the court with a sufficient breakdown to meet [the claimant's] burden to support [a] fee request in specific instances." *Project Vote/Voting for Am., Inc. v. Long*, 887 F.Supp.2d 704, 716 (E.D. Va. 2012). As the court further noted, "[i]nadequate documentation includes the

---

[12] The result is that the rates for all partners with less than 20 years of experience is no more than $400/hour and the rate for the single partner with more than 20 years of experience, Mr. Weaver, is $420/hour. This distinction reflects the weight given to the experience of attorneys under the *Johnson/Barber* test. It should be noted, however, that $420/hour is the upper limit for what counts as a reasonable rate for a very competent attorney in an uncomplicated landlord-tenant dispute.

[13] *See, e.g., In re Outsidewall Tire Litigation*, 52 F. Supp. 3d 777, 788 (E.D. Va. 2014) (reasonable rate for partners was $400 and reasonable rate for associates was $275 in a complex suit involving claims for copyright infringement and misappropriation of trade secrets).

practice of grouping, or 'lumping,' several tasks together under a single entry, without specifying the amount of time spent on each particular task." *Id.* Vague task descriptions present another barrier to a reasonableness review. Entries that do not disclose the nature, volume, or relevance of the documents frustrate any attempt to assess the reasonableness of the time devoted to that task. As one court put it, the absence of detailed documentation precludes the court, as well as opposing counsel, from making a "fair evaluation of the time expended . . . [and] the nature and need for the service." *Uzzell v. Friday,* 618 F.Supp. 1222, 1226 (M.D.N.C.1985) (citing *Hensley v. Eckerhart,* 461 U.S. 424, 441 (1983)).

In these circumstances, courts must exercise sound judgment based on knowledge of the case and litigation experience to reduce the number of hours by an appropriate percentage. Courts faced with excessively vague or inadequate descriptions of tasks in fee claims have reduced fee claims by percentages ranging from 20% to 90%.[14] Similarly, courts confronted with time records infected with lumping have reduced fee claims by percentages ranging from 10% to 20%.[15] In sum, where time records include lumping and vague task descriptions, courts must

---

[14] *See Bishop v. Colvin,* No. RDB-13-519, 2014 WL 2093950 at *3 (D. Md. May 19, 2014) ("Because of the imprecise tracking of hours and tasks throughout the itemized statement of fees ... I recommend reducing the total hours allowed by twenty percent."); *Citizens for Responsibility and Ethics in Washington v. U.S. Dep't. of Justice,* 825 F.Supp.2d 226, 230 (D. D.C. 2011) (reducing hours forming the basis for an award by 37.5% to account for "inaccuracies and overbilling that may have occurred as a result of ... unacceptable timekeeping habits"); *Local 32B–32J, Serv. Emp. Int'l Union, AFL–CIO et al. v. Port Authority of N.Y. and N.J.,* 180 F.R.D. 251, 253 (S.D. N.Y. 1998) ("the vague descriptions contained in many of the attorney time records" justified a "20% reduction in the amount" requested); *Amato v. City of Saratoga Springs,* 991 F.Supp. 62, 66 (N.D. N.Y. 1998) ("grossly inadequate specificity in the proffered billing records" combined with an unreasonably high request for hours resulted in a reduction of the number of hours claimed by 90%).

[15] *See Elderberry of Weber City, LLC v. Living Centers–Southeast, Inc.,* No. 6:12-cv-00052, 2014 WL 3900389 at *4 (W.D. Va. Aug. 11, 2014) ("When confronted with block billing, courts often reduce the fee award by a fixed percentage, striking a balance between the

make a judgment in reducing the relevant number of hours forming the basis for a fee award. *See Guidry v. Clare*, 442 F. Supp. 2d 282, 294 (E.D. Va. 2006) ("Lumping and other types of inadequate documentation are thus a proper basis for reducing a fee award because they prevent an accurate determination of the reasonableness of the time expended in a case."); *E.E.O.C. v. Nutri/System, Inc.*, 685 F. Supp. 568, 573 (E.D. Va. 1988) (noting that "inadequate documentation is a basis for reducing or denying a fee award") (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

Here, a reduction is proper because defendant's fee petition is replete with lumped entries[16] and vague task descriptions.[17] Based on an evaluation of this case, and the fact that defendant already exercised billing judgment in removing many time entries for which it does not seek attorney's fees, a 15% reduction to defendant's fee petition is appropriate.

---

troubling lack of specificity block billing presents and the unfairness of denying an otherwise-properly-granted fee award altogether."); *Project Vote*, 887 F.Supp.2d at 716 (due to lumping, "the court will apply a fixed percentage reduction of 10 percent to the fee award in this case").

[16] *See, e.g.*, Greenspan Supp. Decl. ¶ 10 ("02/11/14 (John E. Thomas Jr.) Draft notice of appearance; review changes to answer and counterclaim with D. Greenspan; multiple telephone calls with co-counsel; revise answer and counterclaim; prepare answer, counterclaim, Rule 7.1 disclosure, and notice of appearance for filing (2.1)"); *Id.* at ¶ 12 ("04/28/14 (John E. Thomas Jr.) Review Route Triple Seven's Responses to Total Hockey's first set of interrogatories and first request for the production of documents; review Route Triple Seven's first set of interrogatories and first request for the production of documents to Total Hockey; calculate deadlines for objections and responses and calendar deadlines; review deficiency letter; correspond with co-counsel (1.7)"); Reh Aff. ¶ 64 ("12/31/14 T. Weaver 5.20 Continue analysis of record and appellants' brief; conference with L. Bentele re preparation of Total Hockey brief; review cases cited in appellant's brief.").

[17] Instances of vague task descriptions include numerous entries that describe a task simply as "revise discovery," "brief call with M. Reh," "research issues involving discovery," "review law concerning issues in the case," Greenspan Supp. Decl. ¶¶ 9-15, and as "continue analysis of legal file," Reh Aff. ¶ 66.

Applying the relevant reductions to the hourly rates and the claimed hours, defendant's total reasonable attorney's fees award in this case is $150,527.35.[18] And because plaintiff does not specifically contest the costs sought by defendant, defendant is further entitled to nontaxable costs in the amount of $1,026.75[19] and taxable costs in the amount of $3,084.50.

## VI.

For the reasons stated here, it is appropriate that defendant be awarded $150,527.35 in attorney's fees, $1,026.75 in nontaxable costs, and $3,084.50 in taxable costs. It is also worth noting that the litigation over the fee claim in this case bids fair to be the proverbial tail that wags the dog.

An appropriate order will issue.

Alexandria, Virginia
August 28, 2015

T. S. Ellis, III
United States District Judge

---

[18] The total is composed of $104,327.30 in fees owed to Armstrong Teasdale LLP and $46,200.05 in fees owed to McGuire Woods LLP.

[19] This amount refers to the nontaxable costs requested by McGuireWoods LLP in its itemized documentation. These costs are reasonable. Armstrong Teasdale LLP is not entitled to the nontaxable costs it requests because it failed to provide proof of itemized costs.